# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBIN HOLLAND, | CIVIL ACTION |
| *Plaintiff*, | |
| v. | No. 17-cv-2909 |
| NTP MARBLE, INC., <u>ET</u> <u>AL.</u>, | |
| *Defendants*. | |

Goldberg, J.                                                                          May 7, 2019

## **Memorandum Opinion**

Plaintiff, Robin Holland, brings this civil action against Defendants, NTP Marble, Inc. and NTP Marble, Inc. doing business as Colonial Marble (collectively, "Colonial"). Plaintiff has also sued Defendant Chris Bekas in his individual capacity. Plaintiff alleges that Defendants discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et seq.* ("PHRA"). Presently before me is Defendants' Motion for Summary Judgment. For the reasons explained below, I will grant Defendants' Motion.

## I.   PROCEDURAL BACKGROUND

On June 28, 2017, Plaintiff filed her Complaint, alleging six counts against Defendants. On February 7, 2018, I granted Defendants' Motion to Dismiss as to the retaliation claims (Counts Two and Four). Accordingly, Plaintiff's remaining claims are as follows: Defendant Colonial discriminated against her in violation of Title VII (Count One), all Defendants discriminated against her in violation of the PHRA (Count Three), all Defendants aided and abetted the

1

discrimination in violation of the PHRA (Count Five), and Defendant Bekas committed assault and battery against her (Count Six).

## II. FACTUAL BACKGROUND

The following facts are taken from Defendants' Statement of Undisputed Facts, and Plaintiff's response thereto. Unless otherwise indicated, these facts are undisputed:

### A. **Employment Background**

1) In September of 2015, Plaintiff began working for Defendant Colonial in the sales department at the King of Prussia location. (Holland Dep. 74:1–76:18, July 27, 2018, ECF No. 33-4.)

2) Defendant Bekas also worked as an employee for Defendant Colonial at the King of Prussia location in the service department, where he handled customer complaints, scheduling, and service calls. Bekas was not a supervisor and had no supervisory authority over anyone during his employment with Colonial. Bekas's father partially owns Colonial. (Bekas Dep. 19:11–20:18, 32:2–20, 99:3–101:5, June 7, 2018, ECF No. 33-5; Viola Dep. 96:11–24, June 7, 2018, ECF No. 33-6; Holland Dep. 182:4–23, 238:5–239:24, ECF No. 33-4.)

3) Defendant Colonial had an anti-discrimination policy, anti-harassment policy, and harassment complaint procedure. Specifically, the complaint procedure directed employees to report incidents of sexual or other unlawful harassment to their supervisor or the Chief Financial Officer. (Defs.' Standard Employment Practices, ECF No. 33-7; Holland Dep. 218:13–21, ECF No. 33-4.) Donna Viola, who was the Chief Financial Officer and head of Human Resources, testified that every employee received a copy of the policies once hired during training, and that Colonial had a zero tolerance policy for harassment. (Viola Dep. 20:5–22:24, June 7, 2018, ECF No. 39-9.)[1]

4) Viola testified that she was in charge of the human resources department for Defendant Colonial, employees were to bring any complaints of harassment to her, and she had not received any training on human resources policies or harassment policies at Colonial. (Viola Dep. 22:2–10, ECF No. 33-7.) While Viola testified

---

[1] Plaintiff argues that "CFO Viola testified that 'three or four' times, she declined to investigate employee reports of discrimination based on national origin, because the 'owners were Greek' and 'they probably wouldn't have believed me.'" (Pl.'s Resp. Defs.' Statement Undisputed Facts ¶ 53, ECF No. 37-4.) However, Defendant properly points out that Plaintiff has not raised a claim for discrimination based on national origin, and that Viola's testimony clearly stated that she still investigated the reports, and spoke to the owners about these complaints. (Viola Dep. 29:3–15, 33:6–20, ECF No. 37-7, 39-9.)

at her deposition that, if a report of a sexual harassment was made by another person other than the victim, she would instruct this person to tell the victim "to come see me, and I'll address it" because "[t]here's too many employees to deal with the hearsay." Viola further testified at her deposition that she would still investigate a harassment complaint, even if she heard about it from another employee. (Viola Dep. 24:7–26:14, ECF No. 37-7, 39-9.)

5) When Plaintiff was hired, she received a copy of the handbook that contained the anti-discrimination policy, anti-harassment policy, and harassment complaint procedure. She signed a document indicating her receipt of the handbook. (Holland Dep. 215:15–219:14, ECF No. 33-4; Pl.'s Acknowledgement Form, June 1, 2015, ECF No. 33-8.)

6) It is undisputed that Bekas did not receive any training regarding harassment while working at Colonial. (Bekas Dep. 22:10–22, 23:17–23, ECF No. 37-6.) However, it is disputed whether Bekas received a handbook regarding the policies. (Viola Dep. 20:5–22:24, June 7, 2018, ECF No. 39-9; Bekas Dep. 22:10–22, 23:17–23, ECF No. 37-6.) Plaintiff posits that Bekas was unaware of Colonial's sexual harassment policies because Bekas specifically stated that he was not told whether the there was a sexual harassment policy during his employment. However, Bekas also testified that understood that he would speak to a supervisor if he was harassed or was accused of harassment. (Bekas Dep. 25:12–15, 27:1–20, ECF No. 37-6.)

**B. The Alleged Harassment**

7) Plaintiff alleges that Defendant Bekas regularly pursued her by repeatedly asking her out and contacting her via text message. In his deposition, Bekas testified that he exchanged personal text messages with Plaintiff "three to four times a week," wherein they generally discussed if they could meet up, but Plaintiff usually said that she was busy. (Bekas Dep. 53:24–56:20, ECF No. 37-6.) The record also reflects that Bekas asked Plaintiff to go to dinner with him three or four times before she accepted his invitation. (Bekas Dep. 46:6–48:10, ECF No. 37-6.)

8) Plaintiff also alleges that, on one occasion, Bekas tickled her at the watercooler in front of another non-supervisory employee, Stavros Stratis, who responded by laughing. However, Bekas disputes any such contact. (Holland Decl. ¶¶ 2–10, Nov. 25, 2018, ECF No. 37-12; Bekas Dep. 77:2–22, 80:20–23, ECF No. 39-10; Holland Dep. 133:12–20, ECF No. 39-11; Stratis Decl., ECF No. 39-1.)

9) Bekas testified that he thought Plaintiff was interested in him because she walked by his office and smiled, and because they had gone on a date. (Bekas Dep. 50:3–25, 93:5–94:8, ECF No. 37-6, 39-10.) Bekas further stated that he was interested in a sexual relationship with Plaintiff. (Bekas Dep. 56:6–9, ECF No. 37-6.)

10) Plaintiff alleges that the harassment culminated on February 24, 2016, where Defendant Bekas touched her inappropriately while in the back construction area at

3

work. Plaintiff told another employee, Marsha Crane,[2] about the incident on February 24, 2019. (Holland Dep. 84:3–24, 211:21–212:19, ECF No. 33-4; Schwarz Decl. ¶¶ 2–6, 9, 11–14, July 3, 2018, ECF No. 33–9.) While Plaintiff argues that it is disputed whether Crane was Plaintiff's supervisor, this argument is belied by the record.[3]

### C. The Investigation

11) On February 24, 2016, Crane instructed Plaintiff to report the incident to Viola because she was Defendant Colonial's Chief Financial Officer and in charge of human resources. When Plaintiff requested time to think about filing a report, Crane told Plaintiff that she would report the allegation to Viola if Plaintiff did not. (Holland Dep. 84:3–24, 211:21–212:19, ECF No. 33-4; Schwarz Decl. ¶¶ 2–6, 9, 11–14, July 3, 2018, ECF No. 33–9; Viola Dep. 18:20–24, ECF No. 33-6.)

12) Plaintiff testified that, when she informed Crane about the February 24, 2016 incident, Crane said "this isn't the first time that this, quote, creep has done this." However, Defendant Colonial clarifies that the full record shows that Plaintiff did not ask Crane what she meant by this statement. Moreover, Plaintiff testified that she has not heard from anyone that Bekas had ever touched another employee. (Holland Dep. 187:8–189:21, ECF No. 37-5.)

13) On February 26, 2016, Plaintiff reported the February 24, 2016 incident to Defendant Colonial's management by sending an email to Viola and James Freeman, who was the Chief Operating Officer. (Holland Dep. 219:10–221:12, ECF No. 33-4; Viola Dep. 58:19–25, ECF No. 33-6; Email, Feb. 26, 2016, ECF No. 33-10.)

14) The record indicates that, upon Viola's receipt of the email on February 26, 2016, Bekas was immediately required to leave the building. (Viola Dep. 58:4–18, ECF No. 33-6; Holland Dep. 228:11–230:20, ECF No. 33-4.)

---

[2] While employed with Defendant Colonial, Marsha Schwarz went by her maiden name of Marsha Crane. (Schwarz Decl. ¶ 2, ECF No. 33-9.)

[3] Plaintiff argues that it is disputed whether Crane was Plaintiff's supervisor, pointing to the fact that Defendant Bekas thought that Plaintiff worked in the tile department, and Viola testified that Crane was the manager of the tile department. (Bekas Dep. 28:1–17, ECF No. 37-6; Viola Dep. 64:8–21, ECF No. 37-7.) However, this mischaracterizes the record because Plaintiff testified that she was employed in the sales department, and explicitly stated that she did not think that Crane was her supervisor. (Holland Dep. 74:1–76:18, 84:3–86:18, July 27, 2018, ECF No. 33-4.) Further, Crane testified that she worked in the tile department (which was not Plaintiff's department), was not a manager, and did not supervise any employees in 2016. (Schwarz Decl. ¶¶ 3–5, ECF No. 33-9.)

15) From the moment Plaintiff sent the February 26, 2016 email that first notified Defendant Colonial of Bekas's behavior, the alleged harassment ceased, Bekas had no further communication or contact with Plaintiff, and no further incidents occurred. (Holland Dep. 228:11–230:5, 237:1–23, ECF No. 33-4.)

16) Viola talked to Plaintiff on the phone about the allegations sent in the February 24, 2016 email, wherein Plaintiff told Viola "the details, exactly what happened . . . exactly where she was . . . harassed and touched in an inappropriate manner." Viola also asked Plaintiff for a formal statement about the allegations, stating that she needed something formal in writing. (Holland Dep. 223:16–224:21, ECF No. 37-5; Viola Dep. 60:1–63:25, 66:6–67:22, 80:10–83:23, 89:7–16, ECF No. 39-9.)

17) It is disputed whether Defendant Colonial requested a verbal or written statement from Defendant Bekas about the allegations. While Viola testified that Defendant Colonial did ask Defendant Bekas for a written statement, Bekas stated that no one from Defendant Colonial ever asked him to give a statement. (Viola Dep. 80:24–82:25, ECF No. 39-9; Bekas Dep. 80:21–81:5, ECF No. 37-6) However, later in his deposition, Bekas also stated that he spoke at length about these allegations to Mr. George Nikolaou, who was an outside attorney hired to help investigate the allegations. (Bekas Dep. 92:16–24, ECF No. 39-10.) Bekas never received any updates about Defendant Colonial's investigation into the allegations. (Bekas Dep. 85:6–11, ECF No. 37-6.)

18) Despite Plaintiff's argument to the contrary, the record demonstrates that Viola also interviewed Marsha Crane about the incident as part of the investigation. During this interview, Viola thought Crane was "extremely vague" about what happened. (Viola Dep. 64:6–21, 66:6–24, 95:7–23, ECF No. 37-7, 39-9; Holland Dep. 74:3–86:18, 211:21–212:6, ECF No. 33-4, 37-5.)

19) While Viola did not tell Plaintiff that Defendant Colonial had hired an investigator, it is disputed whether Viola asked Plaintiff to speak with Mr. Nikolaou. (Viola Dep. 102:21–103:9, ECF No. 37-7; Holland Dep. 223:16–224:17.)

20) While it is undisputed that Bekas was immediately suspended after Viola received Plaintiff's February 26, 2016 email, it is disputed whether Bekas was ever terminated. (Bekas Dep. 81:14–19, 82:13–83:24, ECF No. 37-6, 39-9; Viola Dep. 56:4–8, 83:5–23, ECF No. 33-6, 39-9.)

21) Viola opined during her deposition as follows:

> A: I think that this lawsuit is coming from an opportunist. I think that this - - you know, and on the other side, you know, perhaps there's things that Colonial could have done different as well.
> . . .

> Could have - - Colonial prevented this? Absolutely. There are things that lapsed on both sides. I think both sides are wrong, but both sides are equally wrong.
>
> . . .
>
> If we had stronger policies - - had we had been - - there be, you know, no contact, you know, they're lackadaisy [sic.] as far as making specific policies and really lackadaisy [sic.] at enforcing them. So, you know, nobody was even supposed to be in the service department. Nobody's even supposed to be using these doors. Had we, as a company, says [sic.] that nobody should be back in the construction area alone, because nobody should be back there alone. So, you know, nobody would be in this position today.
>
> Q: And, specifically, what policies do you think should have been enforced?
>
> A: I don't think anybody should have been allowed in that back area alone.

(Viola Dep. 73:35–76:15, ECF No. 37-7, 39-9.)

### D. The Workers' Compensation Claim

22) On March 22, 2016, Plaintiff filed a formal workers' compensation claim for the incident occurring on February 24, 2016. She alleged that she suffered "sexual harassment," whereby she sustained "psychological injuries" due to Bekas's behavior, as well as a shoulder injury from opening a door after allegedly being touched by Bekas. (Claim Petition for Workers' Compensation, Mar. 22, 2016, ECF No. 33-12.)

23) During her deposition, Plaintiff testified that she eventually dropped the sexual harassment portion of her workers' compensation claim, and the focus became the alleged shoulder injury. (Holland Dep. 125:1–5, 261:20–264:24, ECF No. 33-4.)

24) On December 12, 2016, Plaintiff settled the workers' compensation claim, which included a provision that released each party from all claims related to the work-related injury. The parties also added: "Nothing in this agreement shall in any way affect the Claimant's right to pursue an EEOC claim against the Employer." (Workers' Compensation Settlement Agreement, Dec. 12, 2016, ECF No. 33-13.) While Plaintiff argues that it is disputed whether the psychological injuries were a workplace injury, her testimony was as follows:

> Q: You sued for psychological injuries and shoulder. And then you said you popped your shoulder when you were opening the

door and that you were being sexually harassed by the owner's son. That's the claim petition. Right?

A: Yes.

Q: And then you settled that case and you signed a settlement agreement. Right?

A: Yes.

Q: Just to be clear, you claimed that the entire situation was a workplace injury, right?

A: The shoulder? Correct.

Q: The whole thing is related to work.

A: The whole thing, yes. Correct.

Q: And when the insurance company responded to you at first and said it's not - - we're declining your claim, you wrote back and said it absolutely is a workplace injury. Right? Do you remember that?

A: This was a workplace injury.

Q: The whole thing.

A: Yes.

(Holland Dep. 263:21–264:18, ECF No. 33-4.)

### E. **Plaintiff's Resignation and EEOC Complaint**

25) Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 29, 2016, alleging that "the Respondents [Defendant Colonial] never properly investigated the conduct and comments made by Bekas and never took appropriate action." (EEOC Compl. ¶ 33, ECF No. 33-11.) However, during her deposition, Plaintiff stated that, "looking back, they took the proper action." (Holland Dep. 234:3–236:18, ECF No. 33-4.) While Plaintiff disputes this fact because she believed that her statements in the EEOC Complaint were true when she signed it in March of 2016, she does not dispute her deposition testimony that Defendant Colonial took proper action "looking back."

26) It is undisputed that Plaintiff resigned shortly after the February 24, 2016 incident. While Plaintiff emphasizes that she experienced nightmares and panic attacks after

7

her initial email and follow-up calls with Viola, she cannot dispute her deposition testimony that she decided to resign because her workers' compensation benefits had been denied, and that, "looking back," Defendant Colonial took the proper action in addressing her harassment claim. (Holland Dep. 233:1–6, 234:3–236:18, 237:1–23, ECF No. 33-4, 39-11; Holland Decl. ¶ 13, Nov. 25, 2018, ECF No. 37-12.)

27) Plaintiff testified at her deposition that, while she "could have let Colonial investigate, take whatever action they took, and not resign, but still be home waiting for a resolution with this," she chose to resign instead. Plaintiff did not notify Colonial Defendants that she had resigned. Instead, Defendant Colonial was first notified of Plaintiff's resignation when they received the EEOC Complaint. (Holland Dep. 234:3–237:23, ECF No. 33-4; Viola Dep. 105:1–106:24, ECF No. 31-6.)

F. **Defendant Colonial's Knowledge of Bekas's Alleged Harassment**

28) Defendant Colonial asserts that there is no evidence that its management was aware of Bekas's harassment against her or any other employee prior to the February 26, 2016 email. (Defs.' Statement Undisputed Facts ¶ 14, ECF No. 33-3.) Plaintiff disputes this fact, arguing the she only testified that she was unaware of whether the management had heard of any allegations against Bekas prior to the February 26, 2016 email, and if anyone else had reported Bekas to management. (Pl.'s Resp. Defs.' Statement Undisputed Facts ¶ 14, ECF No. 37-4.) However, the record reflects that Plaintiff has not pointed to any evidence to dispute Defendants' assertion that there is no evidence that Defendant Colonial's management was aware of Bekas's harassment against her or any other employee prior to the February 26, 2016 email. Indeed, Plaintiff testified that (a) she had never witnessed Bekas bother, touch, assault, or say anything offensive or obscene to anyone else; and (b) she had had "no information that anyone other than yourself [Plaintiff] ever reported Chris Bekas to anyone in a management or supervisory capacity at Colonial." (Holland Dep. 96:8–97:12, ECF No. 33-4.) Additionally, Viola testified at her deposition that she had never "hear[d] from anyone that they were concerned about sexual harassment at Colonial." (Viola Dep. 57:15–58:3, ECF No. 33-6.)

29) As evidence of Defendant Colonial's knowledge of Bekas's alleged harassment, Plaintiff points to the deposition of Andrea Huck, who was another Colonial employee, who testified that Defendant Bekas asked her out on dates multiple times, "constantly approached her during breaks, and she found him to be "creepy and weird." (Huck Decl. ¶ 3, June 12, 2018, ECF No. 37-10.) However, Defendant Colonial points to Huck's later updated statement, wherein she stated that she had never been harassed by him, and had only been asked out three times by him. (Huck Decl. ¶¶ 5, 7, 8, July 3, 2018, ECF No. 39-4.) There is no fact of record indicating that Huck ever reported this conduct to Defendant Colonial.

8

30) As further evidence of Defendant Colonial's knowledge of Bekas's alleged harassment, Plaintiff points to the testimony of Buck Blackwell, who was another Colonial employee, who stated that he had witnessed Bekas offer himself to several female co-workers and make inappropriate comments to female employees. (Blackwell Decl. ¶¶ 4–5, June 12, [2018], ECF No. 37-9.) There is no fact of record indicating that Blackwell ever reported this conduct to Defendant Colonial.

31) Plaintiff also points to the fact that Defendant Bekas was reprimanded on one occasion for calling a customer to ask her out on a date as further evidence of Defendant Colonial's knowledge of Bekas's alleged harassment. (Bekas Dep. 33:6–23, ECF No. 37-6; Viola Dep. 54:21–55:23, June 7, 2018, ECF No. 37-7.)

32) While Plaintiff states that Defendant Bekas told her that he could do whatever he wanted, Defendant Colonial clarifies that Plaintiff did not ask Bekas what he meant by his statement. Instead, Plaintiff speculated that he meant that he could get away with breaking rules, such as coming into work late and leaving work early. (Holland Dep. 179:4–180:24, ECF No. 37-5.)

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate

9

the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

## IV. DISCUSSION AND ANALYSIS

Defendants move for summary judgment on all of Plaintiff's remaining claims. For the reasons discussed below, I will grant Defendants' motion for summary judgment.

### A. **Plaintiff's Discrimination Claims (Counts One and Three)**

Plaintiff alleges that Defendant Colonial discriminated against her in violation of Title VII (Count One) and in violation of the PHRA (Count Three) by failing to take remedial action upon receipt of her sexual harassment allegations. Defendant Colonial moves for summary judgment, arguing that Plaintiff cannot establish a *prima facie* case of discrimination because Colonial provided her with an avenue for complaints and took prompt and effective remedial action. Plaintiff urges that there are disputed material facts demonstrating that Defendant Colonial knew or should have known of Defendant Bekas's sexual harassment, and failed to take prompt remedial action.

### i.  Legal Standard for Hostile Work Environment

"To succeed on a hostile work environment claim, a plaintiff must prove: (1) she suffered intentional discrimination on the basis of race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for employer liability, such as *respondeat superior*." Miller v. Thomas Jefferson Univ. Hosp., 908 F. Supp. 2d 639, 653 (E.D. Pa. 2012), aff'd, 565 F. App'x 88 (3d Cir. Apr. 30, 2014) (quoting Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999)).[4]

The basis for an employer's liability for a hostile work environment claim "depends on whether the harasser is the victim's supervisor or merely a co-worker." Id.  When a harasser is a co-worker or other non-supervisor, employer liability attaches only if (a) "the employer failed to provide a reasonable avenue for complaint," or (b) "the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." Id. (quoting Huston v. Procter & Gamble Paper Prod. Corp., 568 F.3d 100, 110 (3d Cir. 2009)).  "An employer's remedial action is adequate if it is reasonably calculated to prevent further harassment." Id.

"The mere fact that the harassment fortuitously stops does not demonstrate that the employer acted reasonably." Guthrie v. Baker, 583 F. Supp. 2d 668, 681 (W.D. Pa. 2008).  "An investigation must be undertaken, and an employer can be held liable if a faulty investigation renders its subsequent remedial action inadequate, i.e., not reasonably calculated to prevent further harassment." Knabe v. Boury Corp., 114 F.3d 407, 414 (3d Cir. 1997).  However, "if the remedy

---

[4] In the employment discrimination context, the analysis for adjudicating claims under the PHRA is identical to the Title VII analysis.  Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 n. 2 (3d Cir. 2009); Scheidemantle v. Slippery Rock Univ., 470 F.3d 535, 539 n.5 (3d Cir. 2006).

chosen by the employer is adequate, an aggrieved employee cannot object to that selected action. Concomitantly, an employee cannot dictate that the employer select a certain remedial action." Id. The Third Circuit Court of Appeals has "found an employer's actions to be adequate, as a matter of law, where management undertook an investigation of the employee's complaint within a day after being notified of the harassment, spoke to the alleged harasser about the allegations and the company's sexual harassment policy, and warned the harasser that the company does not tolerate any sexual comments or actions." Andreoli v. Gates, 482 F.3d 641, 644 (3d Cir. 2007) (finding a genuine dispute of material fact as to the employer's actions where the plaintiff had to speak to five different supervisors to elicit any response from management, management took five months between the complaint and a response, and management's only instruction to the defendant was a one-page memo two months after the last incident of harassment).

### ii. Reasonable Avenue for Complaint

Plaintiff does not appear to argue that Defendant Colonial failed to provide a reasonable avenue for complaint. Indeed, the undisputed facts show that Defendant Colonial had an anti-harassment policy and complaint procedure in place. (See supra ¶ 3.) It is also undisputed that Plaintiff knew about this policy, and received the handbook containing this information. (See supra ¶ 5.) Plaintiff utilized this procedure by reporting the harassment to Viola on February 26, 2016. (See supra ¶ 13.) Accordingly, I find that the undisputed facts of record reflect that Defendant Colonial provided a reasonable avenue for complaint.

### iii. Defendant Colonial's Knowledge of the Harassment

Plaintiff argues that there are factual disputes supporting a hostile work environment claim under the theory of *respondeat superior* because Defendant Colonial knew or should have known of Bekas's harassment prior to the February 24, 2016 incident, in light of the fact that "Bekas was

12

known to various coworkers as a person who regularly had unwanted interactions with his female co-workers." (Pl.'s Br. Opp. 8–10, ECF No. 37-1.)

In support, Plaintiff points to the statement of Andrea Huck, who was another employee of Defendant Colonial, wherein she stated that Defendant Bekas asked her out on dates multiple times, "constantly approached her during breaks, and found him to be "creepy and weird." (See supra ¶ 29.) Plaintiff further points to (a) the testimony of another employee, Buck Blackwell, who stated that he had witnessed Bekas offer himself to several female co-workers and make inappropriate comments to female employees, and (b) the fact that Bekas was reprimanded on one occasion for asking a customer on a date. (See supra ¶¶ 30–31.) Defendant Colonial respond that Plaintiff cannot provide evidence that any of the alleged conduct against employees was ever reported to Defendant Colonial's management. (See supra ¶¶ 29–31.)

Plaintiff also urges that Defendant Colonial knew or should have known of the harassment because she testified that Bekas told her that he could do whatever he wanted. This speculation is insufficient to overcome summary judgment because Plaintiff did not ask Bekas what he meant by his statement, and instead assumed that he meant that he could get away with breaking rules, such as coming into work late and leaving work early. (See supra ¶ 32.)

Plaintiff further argues that Defendant Colonial knew or should have known of Bekas's harassment because "[t]hroughout her employment with Defendants, Plaintiff was regularly harassed by Bekas throughout the workday." (Pl.'s Br. Opp. 10, ECF No. 37-1). In support of this assertion, Plaintiff points to the following: (a) Defendant Bekas asked Plaintiff to go to dinner with him three or four times before she accepted his invitation; (b) Bekas stated that he thought that Plaintiff was interested in him because she walked by his office and smiled, and because they had gone on a date; (c) Defendant exchanged personal text messages with Plaintiff "three to four

13

times a week" wherein they generally discussed if she wanted to meet; and (d) on one occasion, Bekas allegedly tickled Plaintiff at the watercolor in front of another non-supervisory employee, Stavros Stratis, who simply laughed in response to viewing the harassment. (See supra ¶¶ 7–10.) However, viewing the evidence in a light most favorable to Plaintiff, these facts do not establish that any of the alleged conduct was ever reported to Defendant Colonial management. (Defs.' Br. 5–7, ECF No. 33-14.)

Finally, Plaintiff urges that the record demonstrates that, when Plaintiff informed Crane about the February 24, 2016 incident, Crane said "this isn't the first time that this, quote, creep has done this." (See supra ¶ 12.) This speculation is not sufficient to overcome summary judgment because the full record clearly reflects that Plaintiff did not ask Crane what she meant by this statement. (See supra ¶ 12.)

Accordingly, I find that the undisputed facts show that Defendant Colonial first learned of the harassment on February 26, 2016 when Plaintiff sent the email to Viola.

### iv. **Defendant Colonial's Alleged Failure to Take Prompt Action**

As noted above, Plaintiff posits that Defendant Colonial is liable for the hostile work environment claim under the theory of *respondeat superior* because it failed to take prompt remedial action upon learning of the February 24, 2016 incident. (Pl.'s Br. Opp. 10–13, ECF No. 37-1.) In support of this assertion, Plaintiff points to the following: (a) Bekas was only told that Plaintiff reported sexual harassment allegations, but no one ever contacted him for further information; (b) there is a disputed fact as to whether the Company requested a statement from Bekas about the incident; (c) Bekas never received updates about any investigation; (d) there is a disputed fact as to whether Plaintiff was asked to speak to the investigator; and (e) Viola did not follow up with Crane about the investigation. (See supra ¶¶ 17–20.) Defendant Colonial responds

14

that it is undisputed that it took prompt remedial action that effectively ended the alleged harassment. (Defs.' Br. 6–8, ECF No. 33-14.)

The record clearly reflects that Defendant Colonial had an anti-harassment policy and complaint procedure in place, and Plaintiff acknowledged that she was aware of these policies. (See supra ¶¶ 3, 5.) Defendant Colonial first learned about the harassment on February 26, 2016, when Plaintiff sent an email to Viola, and Bekas was required to leave the building immediately. (See supra ¶ 14.) Viola then initiated an investigation whereby she interviewed Plaintiff over the phone, asked Plaintiff for a formal written statement, and interviewed Crane about the incident. (See supra ¶¶ 16, 18–19.) While there is a disputed fact as to whether Bekas was asked for a statement, Bekas spoke at length to Nikolaou, who was hired as an outside attorney to help with the investigations. (See supra ¶ 17.) Importantly, Plaintiff admitted that, upon Defendant Colonial's receipt of Plaintiff's email, Bekas's had no further communication or contact with her and no further incidents occurred. (See supra ¶¶ 14–15.) While Plaintiff argues that there is a disputed fact as to whether Bekas was terminated, Plaintiff testified that, "looking back," Defendant Colonial took "proper action." (See supra ¶¶ 20, 25.) Viewing the evidence in a light most favorable to Plaintiff, the facts of record clearly establish that Colonial took proper remedial action upon learning of the alleged harassment.

The parties argue about the applicability of Hitchens v. Montgomery Cnty., 278 F. App'x 233 (3d Cir. May 19, 2008). In Hitchens, the plaintiff sued his employer under Title VII, alleging a hostile work environment claim where her co-worker allegedly sexually harassed her. Id. at 234. The Third Circuit Court of Appeals held that, as a matter of law, the employer was not liable under a theory of *respondeat superior* because the plaintiff never reported the harassment to her supervisor, the police, or EEOC. Id. at 236–37.

Defendant Colonial cites this case in support of summary judgment, noting that it was unaware of any harassment prior to February 26, 2016. Plaintiff urges that Hitchens is distinguishable because Bekas engaged in an ongoing pattern of sexual harassment, rather than a single incident as in Hitchens. (Pl.'s Br. Opp. 13, ECF No. 37-1.) However, as explained above, Plaintiff has not established that Defendant Colonial knew or should have known about any harassment prior to the February 26, 2016 email.[5]

In summary, I conclude that Plaintiff cannot satisfy her burden of *respondeat superior* liability in light of the uncontested facts of record.[6] Accordingly, I find that Defendant Colonial is entitled to summary judgment as to the hostile work environment claim under the Title VII (Count One) and the PHRA (Count Three).

### B. Aiding and Abetting Under the PHRA (Count Five)

Plaintiff alleges liability under the "aiding and abetting" provision of the PHRA against all Defendants. Defendants moves for summary judgment, arguing that no aiding and abetting claim can exist where the primary claim of discrimination upon which the "aiding and abetting" claim

---

[5] Plaintiff incorrectly argues that Hitchens involved a single incident because the Hitchens plaintiff alleged that "she was sexually harassed by Edward Echevarria, a civilian employee of the prison, in March and April of 2000." Hitchens, 278 F. App'x at 234. Plaintiff further urges that Hitchens is distinguishable because Plaintiff immediately reported Bekas's assault to Defendant Colonial. (Pl.'s Br. Opp. 13, ECF No. 37-1.) While I acknowledge that Plaintiff reported the incident within two days, Plaintiff has failed to prove the existence of disputed material facts evidencing Defendant Colonial's failure to take prompt remedial action.

[6] Defendant Colonial argues that, even if *respondeat superior* liability was imposed, it is not liable because they exercised reasonable care to prevent and correct the harassment, and Plaintiff failed to take advantage of any preventative or corrective opportunities provided by Defendant Colonial because she resigned on March 4, 2016. (Def.'s Br. 8–10, ECF No. 33-14.) Plaintiff responds that material disputed facts exist as to whether Colonial exercised "reasonable care" to promptly correct the sexual harassment. (Pl.'s Br. Opp. 13–14, ECF No. 37-1.) For the same reasons articulated infra, and because I find that Colonial is entitled to summary judgment as to the hostile work environment claim under a theory of *respondeat superior* liability, I need not reach a conclusion on this defense.

16

relies has been dismissed. (Defs.' Br. 10–11, ECF No. 33-14.) Plaintiff has not responded to this argument.

The PHRA states:

It shall be an unlawful discriminatory practice

. . .

(e) For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 P.S. § 955(e). "Section 955(e) of the PHRA permits a plaintiff to recover from individual employees who aid and abet violations of Section 955 of the PHRA." Elmarakaby v. Wyeth Pharm., Inc., No. CIV.A. 09-1784, 2015 WL 1456686, at *9 (E.D. Pa. Mar. 30, 2015) (citing Dici v. Com. of Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996)). However, "[a]iding and abetting claims cannot survive independently of the primary PHRA violation." Scully v. Allegheny Ludlum Corp., 257 F. App'x 535, 538 (3d Cir. Dec. 10, 2007).

Because I will grant summary judgment as to the primary claims of discrimination in Counts One and Three, the aiding and abetting claim cannot survive. Accordingly, I will grant summary judgment as to Count Five.

### C. Assault and Battery (Count Six)

Plaintiff has alleged an assault and battery claim against Defendant Bekas for conduct that occurred on February 24, 2016, whereby Defendant Bekas cornered her near the restrooms, grabbed her from behind, and touched her buttocks in an inappropriate manner. (Compl. ¶¶ 33–37, ECF No. 1.) Defendant Bekas has moved for summary judgment, arguing that Plaintiff has conceded that this incident is a work-related injury covered by workers' compensation in light of fact that she filed a workers' compensation claim for the February 24, 2016 incident. (Defs.' Br.

17

11, ECF No. 33-14.) Plaintiff responds that she can still recover for intentional torts committed with "personal animosity," which she argues is the case here. (Pls.' Br. 18–19, ECF No. 37-1.)

Generally, the Pennsylvania Workers' Compensation Act ("PWCA") provides the sole remedy for plaintiff's work-related injuries. 77 Pa. Cons. Stat. § 481(a); Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997). There is a general presumption that an attack is work-related when it occurs on the employer's premises. Cook v. SugarHouse HSP Gaming, L.P., No. 2661 EDA 2016, 2017 WL 6420317, at *4 (Pa. Super. Ct. Dec. 18, 2017) (citing Krasevic v. Goodwill Indus. Ctr. Pa., Inc., 764 A.2d 561, 566–67 (Pa. Super. Ct. 2000)). However, there is an exception to that general rule for intentional torts committed by third parties, which applies "where the alleged injury was motivated by personal reasons as opposed to generalized contempt or hatred and did not arise in the course of employment." 77 Pa. Cons. Stat. § 411; Ahmed v. Lowe's Home Ctrs. Inc., 346 F. App'x 816, 821 (3d Cir. 2009); Fugarino v. Univ. Servs., 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000). Thus, plaintiffs "must show that their claims fall within the exception to the exclusivity of the PWCA." Hancuff v. Prism Techs. & Assemblies, LLC, 357 F. Supp. 2d 828, 833 (W.D. Pa. 2005).

"In discussing the personal animus exception in a sexual harassment context, the United States Court of Appeals for the Third Circuit noted that cases addressing this issue have gone both ways, some courts permitting claims to go forward, while other courts under similar circumstances find the claims to be preempted by the PWCA." Hancuff, 357 F. Supp. 2d at 834. Indeed, in Durham Life Insurance Co. v. Evans, 166 F.3d 139 (3d Cir. 1999), the Third Circuit Court of Appeals "expressly declined to express an opinion as to whether the Pennsylvania Worker's Compensation Act preempts an intentional infliction of emotional distress claim involving a sexual assault." Graudins v. Retro Fitness, LLC, 921 F. Supp. 2d 456, 466 (E.D. Pa. 2013).

18

In Hancuff, the court found that the plaintiffs' claims for intentional infliction of emotional distress ("IIED") and battery were preempted by the PWCA where the defendant made sexual advances against them, the allegations all concerned events that occurred in the workplace while they were at work, and the defendant's conduct appeared to be "motivated by sexual bias, not a personal animosity." Id. at 834. Where a plaintiff sets forth only the allegations of sexual harassment that occurred at the workplace, such allegations are considered to "involve the 'common workplace hazard' of sexual harassment and are preempted by the PWCA." Id. at 834–35 (quoting McGovern v. Jack D's, Inc., Civ.A. 03-5547, 2004 WL 632703, *4 (E.D. Pa. Feb 25, 2004)).[7]

Here, Plaintiff filed a workers' compensation claim for the February 24, 2016 incident, wherein she alleged that she suffered sexual harassment, psychological injuries from Bekas's behavior, and sustained a shoulder injury from opening a door after Bekas's allegedly touched her. (See supra ¶¶ 22–24.) I find that Plaintiff has failed to rebut the strong presumption that her injuries were work-related, in light of the fact that Plaintiff's assault and battery claim arises from the February 24, 2016 incident (i.e., the same incident reported in the workers' compensation claim). Because Plaintiff's injuries were work-related, the PWCA provides the sole remedy for plaintiff's work-related injuries. 77 Pa. Cons. Stat. § 481(a).

---

[7] Plaintiff's citations are inapposite because all of these cases involve only IIED claims, and not claims for assault and battery. See, e.g., Wils v. Phillips, No. CIV.A. 98-5752, 1999 WL 200674, at *6 (E.D. Pa. Apr. 8, 1999) (denying motion to dismiss for the IIED claim arising from Plaintiff's allegations that the defendant harassed her "in and out of the workplace"); Hoy v. Angelone, 609, 691 A.2d 476, 482 (Pa. Super. Ct.), aff'd, 720 A.2d 745 (Pa. 1998) ("Additionally, this Court has also determined that the Workers' Compensation Act will not bar an action for intentional infliction of emotional distress where the injury to the employee arose from harassment which was personal in nature and not part of the proper employer-employee relationship."); Schweitzer v. Rockwell Int'l, 586 A.2d 383, 391 (Pa. Super. Ct. 1990) (holding that the plaintiff's IIED claim was not barred by the PWCA).

19

Accordingly, I will grant Defendant Bekas's Motion for Summary Judgment as to the assault and battery claim (Count Five).

## V. CONCLUSION

For the foregoing reasons, I conclude that Defendants' Motion for Summary Judgment will be granted as to the Title VII hostile work environment claim (Count One), PHRA hostile work environment claim (Count Three), PHRA aiding and abetting claim (Count Five), and assault and battery claim (Count Six).

An appropriate Order follows.